## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TAMMY CHAPA

     *Plaintiff,*

*v.*

COMISSIONER OF SOCIAL
SECURITY,

     *Defendant.*

_____/

CASE NO. 2:20-cv-13029

HON. DENISE PAGE HOOD
DISTRICT JUDGE

HON. PATRICIA T. MORRIS
MAGISTRATE JUDGE

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 13)

### I.    RECOMMENDATION

Plaintiff Tammy Chapa challenges the Commissioner of Social Security regarding a final decision denying her claim for Supplemental Security Income ("SSI"). The case was referred to the undersigned for review. (ECF No. 2); *see* 28 U.S.C. § 636(b)(1)(B) (2012); E.D. Mich. LR 72.1(b)(3). For the reasons below, I recommend **GRANTING** Plaintiff's motion for summary judgment, (ECF No. 12), **DENYING** the Commissioner's motion, (ECF No. 13), and remanding the decision.

### II.    REPORT

#### A. Introduction and Procedural History

Plaintiff first filed an application for a period of disability, Disability Insurance Benefits, and SSI on May 16, 2016, alleging that she became disabled on November 22, 2013. (ECF No. 10, PageID.116.) Plaintiff was denied at the initial level and requested a

1

hearing before an administrative law judge ("ALJ").  (*Id.*)  On June 27, 2018, The ALJ determined that Plaintiff was not disabled.  Plaintiff did not appeal this decision.  (*Id.* at PageID.66, 113, 116, 126.)

Plaintiff filed another application for SSI which was protectively filed on April 5, 2019.  (*Id.* at PageID.220.)  She alleged that he became disabled on June 23, 2018.  (*Id.*) The Commissioner denied the claim on August 7, 2019. (*Id.* at PageID.148.)  Plaintiff then requested a hearing before another ALJ, which occurred on February 6, 2020.  (*Id.* at PageID.85, 160.)  The ALJ issued a decision on March 4, 2020, finding that Plaintiff was not disabled.  (*Id.* at PageID.63.)  The Appeals Council denied review on September 11, 2020.  (*Id.* at PageID.52.)  Plaintiff sought judicial review on November 12, 2020.  (ECF No. 1.)  The parties filed cross-motions for summary judgment and briefing is complete. (ECF Nos. 12, 13.)

### B. Standard of Review

The Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g) (2012).  The District Court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* at 286 (internal citations omitted).

### C. Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A) (2012). The Commissioner's regulations provide that disability is determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4) (2021); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2021).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g) (2021)).

### D. ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 10, at PageID.81.)  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since "March 19, 2019, the application date." (*Id.* at PageID.68.)  At step two, the ALJ concluded that Plaintiff had the following severe impairments: bipolar disorder, anxiety, depression, schizoaffective disorder, insomnia, post-traumatic stress disorder, and chronic obstructive pulmonary disease. (*Id.*)  The ALJ found the following impairments to be non-severe: clogged heart valve, history of congestive heart failure, fibromyalgia, macular degeneration, acid reflux, hyperlipidemia, and an unspecified back injury. (*Id.* at PageID.69–70.)  None of these impairments met or medically equaled a listed impairment at step three. (*Id.* at PageID.70.)  Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds.  She can occasionally kneel, crouch, and crawl.  She can withstand occasional exposure to dust, fumes, pulmonary irritants, and extreme heat or cold.   She should avoid hazards such as dangerous machinery and unprotected heights.  Claimant is further limited to simple, routine, repetitive tasks.  She can understand and remember simple instructions.  She must work in an environment free of fast-paced production requirements, which requires only simple decision-making, and few, if any, workplace changes.  She can have occasional contact with coworkers, supervisors, and the general public.

(*Id.* at PageID.71–72.)  At step four, the ALJ found that Plaintiff could not perform her past relevant work as a caregiver.  (*Id.* at PageID.79.)  Finally, at step five, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy, including, work as a "sorter," a "final assembler," and a "packager/bagger." (*Id.*

at PageID.80.)  Accordingly, the ALJ concluded that Plaintiff was not disabled.  (*Id.* at PageID.81.)

### E. Administrative Record

#### i.  Medical Evidence

Plaintiff suffers from numerous mental and physical impairments that stem from a history of abuse throughout her childhood.  Plaintiff was physically abused and neglected by her father who, for example, once struck her "in the head with a bat" and on another occasion stabbed her in the back, damaging her abdomen and fallopian tubes.  (ECF No. 10, PageID.92, 464.)  Plaintiff's father never sent her to school and Plaintiff received no formal education until she was removed from her father's home when she was sixteen years old. [1]  (ECF No. 10, PageID.72, 91–92, 95.)  At that time, she received special education services focused on teaching her "how to read and speak."  (*Id.* at PageID.73, 91–93.) Plaintiff reports several impairments caused by her childhood trauma including memory problems, illiteracy, difficulty walking, depression, anxiety, and post-traumatic stress disorder ("PTSD")—to name a few.  (*Id.* at PageID.68, 93.)  Despite the residual effects of her childhood abuse, Plaintiff worked as a caregiver for many years until her last client passed away in 2017.  (*Id.* at PageID.96–97, 464.)

Throughout the relevant time period, Plaintiff received mental health treatment from The Guidance Center which prescribed her with medication for her mental impairments.

---

[1] Plaintiff's exact age at the time she was removed from her home is not clear.  Plaintiff's testimony suggests that she was removed at age sixteen, while her motion for summary judgment states that she was removed at age fifteen, and the consulting psychologist states that she was removed at age fourteen.  (ECF No. 10, PageID.72 91, 465); (ECF No. 12, PageID.651.)

(*Id.* at PageID.557.)   However, Plaintiff attended her appointments sporadically and refused individual counseling.  (*Id.* at PageID.79, 364, 367–68, 397, 399, 400, 407, 408, 606, 609–10, 612, 614–15, 626, 629–31.)  On December 4, 2019, Plaintiff's case manager, Massiel Proctor, and treating psychologist, Doctor Charlotte Baker, signed a mental residual functioning capacity report.  (*Id.* at PageID.554–57.)  On the report, they stated that Plaintiff was an "inflexible, concrete thinker" who gets frustrated "extremely" easily, particularly when dealing with change or authority.  (*Id.* at PageID.557.)  Plaintiff reported to Proctor and Doctor Baker that she experiences "mood instability" and "catastrophic thinking."  (*Id.* at PageID.555.)  Accordingly, they opined that Plaintiff could not "meet competitive standards" with respect to any "mental ability[y] or "aptitude[]" needed to perform unskilled work.  (*Id.* at PageID.556.)

Plaintiff's health was also evaluated by two examining state consultants: Doctor Mitchell Solomon, the examining psychologist, and Doctor Shelby Lane, the examining physician.  (*Id.* at PageID.74–75, 465, 469.)  Doctor Solomon found that Plaintiff had a history of anxiety and depression and had received psychiatric treatment since her late teenage years.  (*Id.* at PageID.465.)  At the examination, Plaintiff mentioned that she could no longer remember her aunt's birthday and that she sometimes forgets conversations.  (*Id.*)  Plaintiff appeared "in touch with reality" and displayed "logical, goal-directed, [and] organized" mental activity.  (*Id.* at PageID.466.)  Plaintiff could recall the current year, her birthdate, the names of three large cities, the names of three presidents, and the name of one famous person.  (*Id.*)   However, Plaintiff could not recall four digits in reverse

succession, multiply six by three, or subtract seven from one hundred.  (*Id.*)  Doctor Solomon concluded that Plaintiff has "at least some mild impairments in the areas of working memory, concentration[,] and attention."  (*Id.*)

Doctor Shelby Lane observed Plaintiff on the same day and noted that Plaintiff arrived at the examination with a walker.  (*Id.* at PageID.75, 136, 469, 471.)  Plaintiff displayed a right-sided limp and a slow gait, but she also displayed a normal stance.  (*Id.* at PageID.471.)  Plaintiff could not "tandem walk, heel walk[,] or toe walk."  (*Id.*)  Plaintiff displayed a mildly limited range of motion in her extremities.  (*Id.* at PageID.471, 477–78.)  The non-examining consultants found that Plaintiff could perform a limited range of sedentary work and that she was not disabled.   (*Id.* at PageID.136–41, 144.)

### ii.    Plaintiff's Testimony at the Administrative Hearing

The ALJ began the hearing by examining Plaintiff.  (*Id.* at PageID.90.)  Plaintiff testified that her father did not place her in school as a child and that she did not obtain any education until she was sixteen years old.  (*Id.* at PageID.90–92.)  When Plaintiff left her father's home at sixteen, she was placed in a special education program, but she received no other formal education.  (*Id.*)  Plaintiff never learned to read and never obtained a high school diploma or GED.  (*Id.* at PageID.93–95.)

She testified that from the time she was "six months old" she was abused by her father.  (*Id.* at PageID.92.)  Specifically, Plaintiff mentioned that her father hit her in the head with a baseball bat, stabbed her in the abdomen, and "shot [her] with a gun."  (*Id.*)

Plaintiff further testified that she previously worked as a caregiver, but that she had not worked since 2017. (*Id.* at PageID.96.)  In leu of an income, Plaintiff had been living off "food stamps and health insurance" since she stopped working as a caregiver. (*Id.*)  Plaintiff explained that she had not looked for work since 2017 because she believed no one would hire her due to her memory problems. (*Id.* at PageID.97.)

Plaintiff stated that since her last application her conditions had "deteriorate[ed]." (*Id.*)  Specifically, she mentioned that she was "barely walking," that she could not read, and that her memory had declined to such an extent that she could no longer drive. (*Id.*)  Plaintiff testified that she relied on a walker to ambulate, and even with the use of a walker, she could only walk a short distance. (*Id.* at PageID.99, 105.)  Plaintiff could stand for a maximum of ten minutes at a time and worried that lifting something as heavy as a "gallon of milk" could leave her "paralyzed." (*Id.* at PageID.105.)  Plaintiff needed assistance to dress and shower herself, and she could not do any household chores. (*Id.* at PageID.100–01.)

### iii.    The Vocational Expert's Testimony at the Administrative Hearing

After Plaintiff testified, the ALJ then questioned the vocational expert ("VE"). (*Id.* at PageID.106.)  The ALJ asked the VE whether a hypothetical person who could perform a limited range of sedentary work would be able to perform Plaintiff's past relevant work as a caregiver.[2] (*Id.* at PageID.106–07.)  The VE testified that, consistent with the

---

[2] This limited range of sedentary work is identical to the one included in the ALJ's RFC finding. (*Id.* at PageID.71–72, 106–07.)

Dictionary of Occupational Titles ("DOT"), this person could not perform Plaintiff's past relevant work, but that the person could perform several jobs that were available in the national economy. (*Id.* at PageID.89, 107.) For example, this person could work as a sorter, DOT code 521.687-086, sedentary work, approximately 100,000 jobs; a final assembler, DOT code 713.687-018, sedentary work, approximately 75,000 jobs; and a simple packager/bagger, DOT code 731.685-014, approximately 75,000 jobs. (*Id.* at PageID.107.)

The ALJ then asked the VE to assume the same hypothetical except that the individual would also require "a hand held assistive device[,] such as a walker[,] for ambulation." (*Id.*) The VE testified that, based on her experience, a walker would preclude the person from working in a light industrial setting, thereby precluding work as a sorter, assembler, or packager/bagger. (*See id.* at PageID.107–08.) A walker would be "better tolerated" in an office environment, and the hypothetical person could perform jobs such as an "office clerk, document preparer," DOT code 249.587-018, sedentary work, approximately 30,000 jobs; and a mail sorter, DOT code 209.587-010, sedentary work, approximately 80,000 jobs. (*Id.* at PageID.108–09.) However, these types of jobs would require a high school diploma or GED. (*Id.* at PageID.110.)

Last the ALJ asked the VE to assume the same hypothetical, but to also assume that the person could not remain on task for at least eighty percent of the day. (*Id.* at PageID.109.) The VE testified that no jobs would be available in the national economy for this individual. (*Id.*)

### F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B) (2012). The newly promulgated regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources and nonmedical sources. An acceptable medical source means a medical source who is a:

(1)     Licensed physician (medical or osteopathic doctor);

(2)     Licensed Psychologist, which includes:

      (i)     A licensed or certified psychologist at the independent practice level; or

      (ii)    A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3)     Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4)     Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5)     Qualified speech-language pathologist for speech or language impairments only. For this source, qualified means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language pathology from the American Speech-Language-Hearing Association;

(6)     Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only [];

(7)     Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice []; or

(8)     Licensed Physician Assistant for impairments within his or her licensed scope of practice [].

20 C.F.R. § 404.1502(a) (2021).

A medical source is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." *Id.* § 404.1502(d).

In contrast, a nonmedical source means "a source of evidence who is not a medical source." *Id.* § 404.1502(e). "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy." *Id.*

The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." *Id.* § 404.1520c(a). "The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior

administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.*

Of these factors, the first is "supportability." This factor considers that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the claim. This includes the consideration that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the "[r]elationship with claimant[.]" *Id.* § 404.1520c(c)(3). This factor will include the analysis of:

(i)    Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

(ii)   Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

(iii)  Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s);

     (iv)    Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s);

     (v)    Examining relationship. A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder[.]

*Id.* The fourth factor of the SSA's analysis is "specialization." In making this determination, the SSA will consider "[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty." *Id.* § 404.1520c(c)(4).

Finally, the SSA will consider "other factors." These may include any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(5). "This includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.* Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation

requirements."   The ALJ will consider "source-level articulation."   Pursuant to this requirement, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record." *Id.* § 404.1520c(b)(1).

"Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.*   The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2).   As such, the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.   We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we

articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported" and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors[] for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* § 404.1520c(b)(3).

The regulations clarify that the SSA is "not required to articulate how we considered evidence from non-medical sources using the requirements of paragraphs (a) through (c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c." *Id.* § 404.1520b(c). The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities;" "[d]isability examiner findings," meaning, "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate issue about whether you are disabled;" and "[s]tatements on issues reserved to the Commissioner[;]" these statements include:

(i)    Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work;

(ii)   Statements about whether or not your impairment(s) meets or medically equals any listing in the Listing of Impairments[];

(iii)   Statements about what your residual functional capacity is using our programmatic terms about the functional exertional levels [] instead of descriptions about your functional abilities and limitations[];

(iv)   Statements about whether or not your residual functional capacity prevents you from doing past relevant work[];

(v)   Statements that you do or do not meet the requirements of a medical-vocational rule[]; and

(vi)   Statements about whether or not your disability continues or ends when we conduct a continuing disability review[.]

*Id.* § 404.1520b(c).

The regulations also provide that "[b]ecause a decision by any other governmental and nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules." *Id.* § 404.1504. Therefore, the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental or nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits." *Id.* The Commissioner will, however, "consider all of the supporting evidence underlying the other governmental or nongovernmental entity's decision that we receive as evidence in your claim[.]" *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f). Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)." *Id.* Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood,

thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* § 404.1502(g). Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques[,]" and "diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as x-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain. "In considering whether you are disabled, we will consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. We will consider all your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work[.]" *Id.* § 404.1529(a).

But the SSA clarified, "however, statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence about your pain or other symptoms which may reasonably be accepted as

consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." *Id.* § 404.1529(a).

Further, "[i]n evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you." *Id.* § 404.1529(a). The SSA clarified that it will "then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms." *Id.* § 404.1529(c)(3). This other information may include "[t]he information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living)," which "is also an important indicator of the intensity and persistence of your symptoms." *Id.*

"Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . We will

consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons[.]"  *Id.*  The regulations establish that "[f]actors relevant to your symptoms, such as pain, which we will consider include []:

>   (i)     [D]aily activities;
>
>   (ii)    The location, duration, frequency, and intensity of . . . pain;
>
>   (iii)   Precipitating and aggravating factors;
>
>   (iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
>
>   (v)     Treatment, other than medication, . . . received for relief of . . . pain;
>
>   (vi)    Any measures . . . used to relieve . . . pain.

*Id.*

The new regulations also impose a duty on the claimant: "In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work." *Id.* § 404.1530(a).  Stated differently, "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits."  *Id.* § 404.1530(b).  Acceptable (or "good") reasons for failure to follow prescribed treatment include:

>   (1)     The specific medical treatment is contrary to the established teaching and tenets of your religion;
>
>   (2)     The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

    (3)    Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

    (4)    The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

    (5)    The treatment involves amputation of an extremity, or major part of an extremity.

*Id.* § 404.1530(c).

### G. Arguments and Analysis

#### a. Listings 12.04, 12.06, and 12.15

Plaintiff first argues that the ALJ did not rely on substantial evidence in finding that Plaintiff did not meet listings 12.04, 12.06, and 12.15—the listings for "depressive, bipolar and related disorders"; "anxiety and obsessive-compulsive disorders"; and "trauma[] and stressor-related disorders"; respectively. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.04, 12.06, 12.15. At step three, a claimant can show that they are disabled by meeting the elements of a listing.[3] 20 C.F.R. § 404.1520(a)(4)(iii) (2021). To meet a listing, claimants carry the burden of showing that they meet every element of a given listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Each of the contested listings follows the same general three-pronged structure. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(A)(2). First, to meet any of the three listings, the claimant must satisfy "paragraph A" of the listing by providing medical evidence that

---

[3] Plaintiff argues only that the ALJ erred in finding that she did not meet the listings, not that the ALJ erred in finding that her impairments did not medically equal the listings. Accordingly, I will not consider whether Plaintiff's impairments medically equaled any of the listings. *Roberts v. Comm'r of Soc. Sec.*, No. 2:14-cv-11994, 2015 WL 5439707, at *14 (E.D. Mich. June 9, 2015) (citing *Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 686 (6th Cir. 2007)).

meets the listing's specific medical criteria.  *Id.* § 12.00(A)(2)(a).  Once a claimant satisfies

paragraph A, the claimant will meet any of the listings if he or she can (1) show sufficient

limitations in his or her mental functioning under paragraph B of the listing, or (2) show

that his or her disorder is "serious and persistent" under paragraph C.  *Id.* § 12.00(A)(2)(b)–

(c).  While the ALJ did not discuss whether Plaintiff met paragraph A of the listings, both

parties agree, correctly, that this element of the listings has been met.  (ECF No. 12,

PageID.668; ECF No. 13, PageID.679 n.2.)  Additionally, because Plaintiff does not argue

that the ALJ did not rely on substantial evidence in finding that Plaintiff failed to meet

paragraph B of the listings, this argument has been waived.  *See Roberts*, 2015 WL

5439707, at *14; (ECF No. 12, PageID.667–69).  Accordingly, I limit my discussion to the

paragraph C criteria of the listings.[4]

Listings 12.04, 12.06, and 12.15 have identical requirements for paragraph C.  20

C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.04(C), 12.06(C), 12.15(C).  Specifically, the

listings require a claimant to show that his or her impairments are "serious and persistent."

*Id.*  To show that an impairment is serious and persistent, a claimant must show (1) a

medically documented history of the existence of the claimant's impairment for the

---

[4] The Commissioner argues that Plaintiff has waived her paragraph C argument because her discussion of
the paragraph C criteria "is in one paragraph" and "does not provide any citations to the record."  (ECF No.
13, PageID.680.)  While it is true that "[i]ssues averted to in a perfunctory manner . . . are deemed waived,"
I suggest that Plaintiff's argument is sufficiently articulated and should not be waived.  *McPherson v.
Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).  Although Plaintiff's paragraph C discussion is brief and
curiously lacking any citations to the record, Plaintiff still raises the issue, provides the relevant law, points
out specific facts that support her conclusion, and provides record citations in her reply brief—this is
sufficient to avoid waiver.  (ECF No. 12, PageID.669); *cf. McPherson*, 125 F.3d at 995–96 ("[Plaintiffs]
have not, for example, explained the elements of a false-arrest claim under Michigan law . . . and they have
not pointed to evidence in the record that could satisfy these elements as to these defendants.").

preceding two years, (2) ongoing medical treatment that diminishes symptoms and signs of the disorder, and (3) "that, despite the claimant's 'diminished symptoms and signs,'" the claimant has "achieved only marginal adjustment." *Id.* § 12.00(G)(2).

First, although Plaintiff's impairments have been medically documented for the last two years, she has not received ongoing medical treatment. The regulations define "ongoing" medical treatment as treatment that is obtained "with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for [the claimant's] medical condition." *Id.* § 12.00(G)(2)(b). While "inconsistent treatment or lack of compliance" may indicate treatment that is not ongoing, inconsistent treatment or lack of compliance may be excused where it results from the claimant's "mental disorder" and leads "to an exacerbation of the claimant's symptoms and signs. *Id.*

For example, in *Holmes v. Comm'r of Soc. Sec.*, the Northern District of Ohio held that an ALJ relied on substantial evidence in finding that a claimant who "sporadically participated in counseling" and often refused to take her medications did not receive ongoing treatment. No. 1:17-cv-01648, 2018 WL 4442314, at *14 (N.D. Ohio June 11, 2018). The claimant in *Holmes* received continuous treatment for her bipolar disorder; however, the ALJ found "that on multiple occasions" the claimant "decided on her own to stop taking prescribed medications" and would sometimes go "multiple days without medication." *Id.* The ALJ also noted that while the claimant received continuous treatment, she frequently missed counseling and support groups. *Id.* The Court found that the ALJ relied on substantial evidence in refusing to excuse the claimant's absences,

23

because the claimant never "argued that her periods of inconsistent treatment or lack of compliance were a feature of her mental disorder." *Id.* (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(G)(2)(b) ("We will consider periods of inconsistent treatment or lack of compliance with treatment that may result from your mental disorder.")).

Similarly, here there is substantial evidence that Plaintiff did not receive ongoing medical treatment. The ALJ recognized that Plaintiff "did not regularly meet with her case manager (despite numerous contact attempts made by The Guidance Center) and she had declined individual counseling." (ECF No. 10, PageID.79, 606, 626.) Like the claimant in *Holmes*, Plaintiff's treatment was sporadic, and she was frequently noncompliant. (*Id.* at PageID.79, 364, 367–68, 397, 399, 400, 407, 408, 606, 609–10, 612, 614–15, 626, 629–31.) Moreover, like in *Holmes*, Plaintiff does not argue that her inconsistent treatment or lack of compliance was caused by her mental impairments. *Cf.* 2018 WL 4442314, at *14. Accordingly, the record contains substantial evidence that Plaintiff did not receive ongoing treatment under paragraph C.

Even if Plaintiff displayed ongoing treatment, I suggest that the record contains substantial evidence that Plaintiff did not satisfy the last element of paragraph C by achieving only "marginal adjustment." Marginal adjustment means that a claimant's "adaptation to the requirements of daily life is fragile." In other words, a claimant has "minimal capacity to adapt to changes in [his or her] environment or to demands that are not already part of [his or her] daily life." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(G)(2)(c). A claimant is considered to have achieved only marginal adjustment

"when the evidence shows that changes or increased demands have led to exacerbation of [his or her] symptoms and signs and to deterioration in [his or her] functioning." *Id.*  For example, this could mean that a claimant has "become unable to function outside" of his or her "home . . . without substantial psychosocial support." *Id.*  A claimant's deteriorated functioning might be evidenced by facts such as "a significant change in medication" or frequent hospitalizations. *Id.*

Here, substantial evidence supports the ALJ's finding that Plaintiff can adapt "to changes in her environment or to demands that are not already part of her daily life." (ECF No. 10, PageID.71.)  First, the ALJ relied on the non-examining consulting psychologist who found that Plaintiff did not meet the paragraph C criteria of any listing.  (*Id.* at PageID.78, 137.)  The record supports the examiner's finding.  Plaintiff could contact her case manager and schedule a medical appointment when it was necessary to prevent cancellation of her medical services.  (*Id.* at PageID. 70, 77–78, 606, 608.)  She was also able to undertake eviction proceedings against a tenant.  (*Id.* at PageID.73, 616, 627, 701.)  Plaintiff argues that the ALJ's finding is not supported by substantial evidence because "her therapists" and "the mental CE done in 2019" note that "she is not very tolerant to changes in daily life." (ECF No. 12, PageID.669.)  However, Plaintiff's argument, at most, provides substantial evidence that Plaintiff was disabled, and this Court will not remand simply because the record contains substantial evidence that may support a different conclusion.  *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 440 (6th Cir. 2017) (quoting *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986)).

It is the ALJ, not the Court, who must weigh the evidence.  *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982).

### b. Whether the ALJ's Residual Functional Capacity Finding Was Supported by Substantial Evidence

Alternatively, Plaintiff argues that the ALJ erred in assessing the limiting effects of Plaintiff's impairments, and if the ALJ had accurately assessed the limiting effects of her impairments, then, based on the vocational expert's testimony, the ALJ could not have found that Plaintiff could have performed any work in the national economy.  (ECF No. 12, PageID.660, 662.)  While plaintiff states that her argument is unrelated to her residual functional capacity ("RFC") and that "[t]he focus is [instead] on [her] inability to engage in substantial gainful activity," her argument is best construed as a criticism of the ALJ's RFC finding. (ECF No. 14, PageID.697.)

While Plaintiff is correct that disability is defined as "the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment. . .," Plaintiff's argument that she is disabled because she cannot engage in substantial gainful activity is over-simplistic.  42 U.S.C. § 1382c(a)(3)(A) (2012).  Indeed, it appears that Plaintiff overlooks the five-step sequential evaluation process used to determine disability.  To determine whether a claimant meets the definition of disability, the Commissioner must use the following five-step process:

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a

combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (2021).  Between the third and fourth step, the ALJ must determine the claimant's RFC.  A claimant's RFC "is the most [he or she] can do despite [his or her] limitations.  It accounts for a claimant's "ability to meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. § 404.1545(a)(1) (2021).

Because an ALJ must go through this five-step process to determine whether a claimant is disabled, any error in determining disability must have been caused by an error in the five-step evaluation.  Although she maintains otherwise, Plaintiff's argument alleges error with respect to the ALJ's RFC finding because she is challenging the ALJ's assessment of what she can do in the work setting despite her physical and mental limitations.[5]  (*See* ECF No.12, PageID.660–66.)

---

[5] Relatedly, Plaintiff's argument that the ALJ "discard[ed] the vocational expert's finding that Plaintiff could not engage in substantial gainful activity . . ." is really a criticism of the ALJ's RFC finding.  (ECF No.14, PageID.698.)  Specifically, Plaintiff argues that the ALJ ignored the Vocational Expert's ("VE") "testimony" that Plaintiff's "use of a walker" would "not allow her to find work in the national economy." (*Id.*)  But Plaintiff misunderstands the role of the VE.  The VE did not testify that Plaintiff, herself, could not perform work in the national economy.  Nor did the VE testify that Plaintiff required the use of a walker.

Accordingly, Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence for two reasons. First, the ALJ erred by improperly discounting Plaintiff's treating physicians. And second, the ALJ improperly cherry picked the record to find evidence that supported an under restrictive RFC. Both arguments fail.

### i. Treating Source Rule

First, Plaintiff argues that the ALJ arrived at an under restrictive RFC by discounting the opinions of Plaintiff's treating physicians. Plaintiff argues that his physicians' medical opinions were entitled to controlling weight under the treating source rule. However, this regulation was rescinded before Plaintiff filed her application. Prior to March 27, 2017, 20 C.F.R. § 404.1527(c)(2) instructed that "[a]n ALJ must give the [medical] opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Under the regulations in place at the time Plaintiff filed her application, ALJ's are not bound by the opinion of a treating source. 20 C.F.R. § 404.1520c(a) (2021) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any

---

The VE testified as to whether jobs existed in the national economy for a hypothetical person with various restrictions on their ability to work. The VE testified that while work existed for this hypothetical person, no jobs would be available if the person required the use of a walker at work. (ECF No. 10, PageID.106–08); *see* 20 C.F.R. §§ 404.1566, 404.1560(b)(2) (2012). It was the ALJ, not the VE, who found that Plaintiff did not require the use of a walker. (ECF No. 10, PageID.76.) Accordingly, the ALJ found, consistent with the VE's testimony, that jobs existed in the national economy which Plaintiff could perform. (*Id.* at PageID.80.) Moreover, the ALJ's determination that Plaintiff did not require the use of a walker was made specifically when assessing Plaintiff's RFC. (*Id.* at PageID.71, 76.)

medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Instead, the ALJ must "evaluate the persuasiveness" of each medical opinion and decide how much weight to afford it. *Id.*; *Stanley v. Comm'r of Soc. Sec.*, Case No. 20-11678, 2021 WL 3021265, at *6 (E.D. Mich. July 16, 2021). This evaluation should consider, among other factors, (1) the degree to which the physician's opinion is supported by objective medical evidence and supporting explanations and (2) the degree to which the opinion is consistent with the evidence from other medical sources. *Id.* § 404.1520c(a), (c)(1)–(2). Although the new regulations still consider the "[e]xtent of the [source's] treatment relationship" with the claimant, a medical source's relationship to the claimant is just one of several non-dispositive factors. *Id.* § 404.1520c(c).

Similarly, Plaintiff also suggests that the ALJ erred by assigning more weight to opinions from non-examining sources than to her treating sources, who had an opportunity to examine her. While the old regulations provided that an ALJ must generally assign more weight to a physician who has examined the claimant than to a non-examining consultant, unless "[t]he non-examining source's opinion 'is based on a review of a complete case record,'" the regulations now provide that a physician's opportunity to physically examine a claimant is simply a factor an ALJ should consider when evaluating the credibility of a consulting physician. *Compare Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (quoting Social Security Ruling 96-6p, 1996 WL 374180, at *3 (July 2, 1996)) *and* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(c)(3)(v). However, like treating sources, the new regulations still recognize that an examining physician "*may* have a better understanding

of [a claimant's] impairment" than a non-examining physician.   20 C.F.R. §

404.1520c(c)(3)(v) (emphasis added).

Accordingly, the ALJ here did not err by declining to give Plaintiff's treating

physicians controlling weight.  Moreover, under the new regulations, the weight afforded

to Plaintiff's treating sources was supported by substantial evidence.

Plaintiff's case manager, Massiel Proctor, and treating psychologist, Doctor

Charlotte Baker, signed a "Mental Impairment Questionnaire." (ECF No. 10, PageID.555–

57.)   On this document, they opined that Plaintiff was "unable to meet competitive

standards" with respect to all "mental abilities and aptitudes needed to do unskilled work."

(*Id.* at PageID.556.)  The ALJ considered this opinion but did not find it persuasive.  (*Id.*

at PageID.78.)  The ALJ noted that although the document opined that Plaintiff could not

meet competitive standards in the workplace, Doctor Baker "never noted more than mild

findings in her examination notes."  (*Id.* at PageID.78, 601, 619, 635.)  Moreover, Proctor

had only met with Plaintiff on a "very limited basis," and the few meetings they have had

primarily "pertained to social security benefits."  (*See, e.g.*, *id.* at PageID.606, 616, 626.)

The ALJ also noted that Plaintiff's abilities to communicate with her medical providers,

evict a tenant, and testify at her hearing undermined Proctor and Doctor Baker's opinion

that she could not perform unskilled work.  (*Id.* at PageID.78.)  Accordingly, the ALJ

properly considered the factors in 20 C.F.R. § 404.1520c(c) and discounted the opinion

after finding that it was inconsistent with, and unsupported by, medical evidence in the

record.  I suggest that this decision was supported by substantial evidence.

In contrast, the ALJ found that the opinion of the non-examining consulting psychologist, Doctor Jerry Csokasy, was persuasive because it was consistent with the medical evidence in the record.  (ECF No. 10, PageID.78.)  Notably, Doctor Csokasy recommended a highly restrictive RFC to account for Plaintiff's mental impairments.  (*Id.* at PageID.137.)  Specifically, Doctor Csokasy determined that Plaintiff could perform sedentary, unskilled work that was "simple" and limited to "routine tasks [performed] on a sustained basis in [a] low stress environment with limited contact with others."  (*Id.*)  Doctor Csoskasy arrived at this finding by deferring to the prior ALJ's RFC finding because "no new or material evidence had been received that would alter the prior ALJ's findings."  (*Id.*)  The ALJ in Plaintiff's present claim reasoned that Doctor Csokasy "performed a thorough and objective review" of the medical record and that his opinion was "consistent with the cumulative medical evidence of record."  (*Id.* at PageID.78.) Indeed, Doctor Csokasy considered all of Plaintiff's medical records as well as the observations of the examining consulting psychologist, Doctor Mitchell Solomon, who found that although Plaintiff was "despondent, tearful, [and] anxious," she was "in touch [with] reality" and displayed "logical" and "organized" mental activity.  (*Id.* at PageID.78, 135–37.)

Likewise, the ALJ considered Doctor Mitchell Solomon's opinion and found it persuasive.  (*Id.* at PageID.75.)  Doctor Solomon observed Plaintiff's cognitive and emotional abilities and found mixed results.  For example, while Plaintiff could "recall four digits forward . . . she could not recall any digits in reverse succession . . . ."  (*Id.* at PageID.75, 466.)  Plaintiff could "complete simple addition and subtraction," but could not

"complete simple multiplication" or subtract seven from 100.  (*Id.*)  She knew her birthday and the current year and was able to name "three cities, three presidents, and one famous person."  (*Id.*)  Doctor Solomon opined that Plaintiff was "at least" mildly impaired with respect to her memory, concentration, and attention.  (*Id.*)  While Doctor Solomon opined that Plaintiff could work, he stated that she "would have problems with following more than simple[,] routine tasks . . . ."  (*Id.*)  The ALJ reasonably found that Doctor Solomon's opinion was supported by, and consistent with, his own mixed findings as well as the cumulative evidence of the record.  (*See id.* at PageID.75, 466, 606, 608, 616, 627, 701.)  Thus, I suggest that the ALJ relied on substantial evidence in finding Doctor Solomon's, and Doctor Csokasy's, opinions persuasive.

### ii.  Whether the ALJ Cherry Picked the Record

Additionally, Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because the ALJ selectively relied on portions of the record that displayed "small[,] periodic improvements" and ignored overwhelming evidence that suggested Plaintiff was disabled.  (ECF No. 10, PageID.664–65.)

ALJ's may not "pick and choose" evidence that supports their conclusion while ignoring evidence that undermines their conclusion.  *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir.2008).  However, arguments, like Plaintiff's, that an ALJ "cherry picked" evidence are seldom successful because often "the same process can be described more neutrally as weighing the evidence."  *White v. Comm'r of*

*Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).  Crediting an argument that the ALJ "cherry picked" evidence typically requires the District Court to reweigh the evidence.  *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014).

Plaintiff compares this case to *Gentry v. Comm'r of Soc. Sec.* to argue that the ALJ discounted Plaintiff's functional limitations by focusing on short, periodic improvements, while ignoring portions of the record that evidenced continuing, severe impairments.  741 F.3d 708, 723 (6th Cir. 2014).  In *Gentry*, an ALJ determined that a claimant's psoriasis and psoriatic arthritis were not severe impairments at step two because the claimant's conditions would periodically improve with treatment and the claimant stopped taking several medications for these conditions.  *Id.* at 724.  However, the Sixth Circuit reasoned that the ALJ ignored evidence regarding the overall "trajectory" of the claimant's illness.  *Id.* at 723.  Specifically, the ALJ did not discuss how after each period of improvement, the claimant's symptoms would subsequently decline.  *Id.* at 724.  Additionally, the ALJ did not consider medical evidence that the claimant stopped taking certain medications because he experienced adverse side effects, not because his symptoms had improved.  *Id.* As a result, the ALJ underplayed the severity of Plaintiff's conditions which led her to fail to consider these symptoms at step three.  *Id.* at 723–24.

Unlike *Gentry*, the ALJ here did not point to isolated portions of the record to reason that Plaintiff's symptoms had improved.  Instead, she acknowledged all of Plaintiff's symptoms, as well as the medical sources that supported the alleged severity of Plaintiff's symptoms, but also pointed to evidence that contradicted the alleged severity of Plaintiff's

symptoms and reasoned that Plaintiff's symptoms, although consistent and restrictive, were not as severe as alleged.

For example, Plaintiff argues that the ALJ erred by finding that she could lift up to ten pounds and stand or walk occasionally by ignoring Plaintiff's testimony that she could lift no more than ten pounds and that she could not stand or walk for more than ten minutes at a time. (*See* ECF No. 12, PageID.663.)  However, the ALJ considered this testimony and found that it was "not entirely consistent with the evidence."  (*See* ECF No. 10, PageID.72, 74, 105.)  Indeed, Plaintiff "work[ed] as a caregiver for the last seventeen years" and only stopped working after her client passed away.  (*Id.* at PageID.74.)  She also took pain medications and displayed a normal range of motion in her legs and hips. (*Id.* at PageID.74, 76.)   Further, although Plaintiff's subjective complaints were contradicted by some of the medical evidence, it appears that the ALJ still gave Plaintiff the benefit of the doubt by finding an RFC that was only slightly less restrictive than Plaintiff's alleged symptoms.  (*Id.* at PageID.71 (finding that plaintiff had an RFC to perform sedentary work)); 20 C.F.R. §416.967(a) (2021) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."); SSR 96-9p, 1996 WL  1898704, at *3 (July 2, 1996) ("'Occasionally' means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday.").  Unlike *Gentry*, it does not appear that the ALJ ignored substantial portions of the record to make a finding that was supported by only a scintilla of evidence.  *Cf.* 741 F.3d at 723–24.  Accordingly, I suggest that this finding is supported by substantial evidence.

Plaintiff also argues that the ALJ ignored evidence of Plaintiff's mental impairments.  Specifically, Plaintiff argues that the ALJ ignored (1) her treating source opinions, and (2) her "stream of consciousness speech patterns" at the hearing.  However, first, as discussed, the ALJ did not ignore Plaintiff's treating source opinions—she discussed them at length and, relying on substantial evidence, properly discounted them as inconsistent with the medical evidence in the record. Second, although the ALJ understated Plaintiff's difficulty communicating during the hearing, Plaintiff still gave direct answers to most of the questions asked of her.  (*See* ECF No. 10, PageID.90–103.)  The ALJ also noted that Plaintiff could communicate with her health care providers when she needed to and that she could communicate well enough to evict a tenant from her home.  (*Id.* at PageID.70, 78, 616, 627.)  Further, Plaintiff's medical providers noted that she displayed mild to no symptoms in her speech, thought process, thought content, associations, judgment, insight, attention, concentration, fund of knowledge, and memory.  (*Id.* at PageID.601, 619, 635.)  And, in any event, the ALJ once again gave Plaintiff the benefit of the doubt by limiting her to "simple, routine, competitive tasks" which require only "simple instructions"; few "workplace changes"; and "occasional interaction with coworkers, supervisors, and the general public."  (*Id.* at PageID.72.)

Last, Plaintiff argues that the ALJ ignored evidence that she required a walker. According to Plaintiff, because the VE testified that no jobs would be available for a hypothetical person with Plaintiff's RFC, but who also required the use of a walker, Plaintiff would have been found disabled if the ALJ had considered this evidence.  (ECF No. 14, PageID.698; ECF No.12, PageID.663.)  However, the ALJ could not have found

that Plaintiff's walker was medically required.  "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed."  SSR 96-9p, 1996 WL  1898704, at *7.  There is no such documentation in the record.  At most, the record shows that Plaintiff arrived at her meetings with the state-consultative examiners with a walker.  (ECF No. 10, PageID.76.) The examiners did not opine that Plaintiff needed a walker—they simply observed that Plaintiff had brought one with her.  (*Id.* at PageID.465, 471*); cf. Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002); *Russell v. Comm'r of Soc. Sec.*, No. 07-14878, 2009 WL 884701, at *3 (E.D. Mich. Mar. 30, 2009) (finding that a physician's opinion that a claimant "would benefit from the use of a cane" did not show a medical necessity under SSR 96-9p).   Plaintiff has provided no prescriptions or similar documentation that demonstrate a medical need for her walker.  *See Wilson*, 378 F.3d at 548 (6th Cir. 2004) ("The claimant bears the burden of proof during the first four steps.").   Thus, the ALJ's finding that Plaintiff's walker was not medically necessary is supported by substantial evidence.

Rather than pointing out substantial portions of the record that were overlooked by the ALJ, as in *Gentry*, Plaintiff simply identifies substantial evidence that supports a more restrictive RFC; however, because the ALJ's decision is supported by substantial evidence, and this Court cannot remand simply because substantial evidence also supports a different conclusion.  *See Shepard*, 705 F. App'x at 440.

### c.  Whether the ALJ Legally Erred by Adopting Findings from the Prior ALJ Decision

Although the ALJ's RFC finding was supported by substantial evidence, the ALJ erred at both steps four and five by treating the prior ALJ's findings as binding absent "new and material evidence of a changed condition."   (*See* ECF No. 10, PageID.79.)  While the ALJ could have chosen to give deference to the prior ALJ's findings, she was not required to.  Indeed, if not supported by substantial evidence, the ALJ could have disregarded the prior ALJ's findings completely when making her factual findings.  However, because the ALJ considered herself bound by the prior ALJ's findings, I suggest that she adopted her findings without meaningfully considering any additional evidence that supported a different conclusion.

At step five the ALJ, relying on *Dennard v. Sec'y of Health & Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990) and SSAR 98-3(6), 1998 WL 283901 (June 1, 1998), adopted the prior ALJ's finding that Plaintiff "has a limited education" after determining that she lacked sufficient information to depart from the prior ALJ's finding, and was therefore bound by the prior finding.  (*See* ECF No. 10, PageID.72, 75, 95.)  However, both *Dennard* and SSAR 98-3(6) were significantly narrowed in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931–34 (6th Cir. 2018) and as a result, the ALJ applied the wrong legal standard which led her to fail to consider evidence related to Plaintiff's educational level.

In *Dennard*, the Sixth Circuit held that an ALJ was "precluded by estoppel" from reconsidering whether a claimant could perform his past relevant work after another ALJ, deciding an earlier application, determined that the claimant could perform his past relevant work.  907 F.2d at 600.  Subsequently, the Social Security Administration promulgated SSAR 98-3(6) which interpreted *Dennard* and instructed ALJs that they "must adopt"

findings from earlier decisions, "unless there is new and material evidence relating" to the prior ALJ's finding.  SSAR 98-3(6), 1998 WL 28390, at *3.  The ruling applied even where a new application alleged disability during a timeframe that succeeded the earlier application.  *See id.*

After *Dennard*, the Sixth Circuit decided *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997), which, relying partially on Court's holding in *Dennard*, explicitly held that where an ALJ makes a final determination concerning a claimant's entitlement to benefits, all of the ALJ's *findings* are binding on the parties in all subsequent applications absent evidence of a "changed condition."  The *Drummond* Court reasoned that "principles of res judicata" prevent ALJs from challenging earlier findings, absent changed circumstances.  *Id.* at 841–42.  In several unpublished decisions following *Drummond*, the Sixth Circuit applied this rule even where the new application concerned periods of time that were not addressed by the Administration's prior decision.  *See, e.g.*, *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015); *Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 464 (6th Cir. 2004).

However, in *Earley*, the Sixth Circuit significantly restricted the scope of *Drummond* and *Dennard*.  The Sixth Circuit explained that the *Drummond* Court "overstate[d]" how res judicata applied to subsequent applications.  *Earley*, 893 F.3d at 933.  The Court held that while the *Drummond* Court was correct that "res judicata may apply to administrative proceedings," res judicata only prevented subsequent applications "for the same period of time," that was considered in the prior application.  *Id.*  Thus, ALJ's are not bound by prior findings when considering periods of disability that succeed the

time period adjudicated in the earlier decision.  *Id.*  Indeed, because "human health is rarely static" an "earlier proceeding . . . could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date."  *Id.*  Thus, ALJ's must "giv[e] a fresh look" to periods of disability that were not addressed in the prior ALJ's decision.  *Id.* at 931, 934.  Still, an ALJ at a later hearing need not "ignore" a prior ALJ's findings—"[a] later [ALJ] may" at least "consider what an earlier ALJ did . . . ."  *Id.* at 934.  An applicant whose "second filing mimics the first one" should "not have high expectations about success."  *Id.* at 933.

Here, because the ALJ incorrectly evaluated the prior ALJ's finding under *Dennard* and *Drummond*, the ALJ did not adequately consider Plaintiff's educational level after June 23, 2018, Plaintiff's new alleged onset date.  (ECF No. 10, PageID.220.)  The regulations define a "limited education" as "reasoning, arithmetic, and language skills" that are "not [developed] enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs."   20 C.F.R. § 416.964(b)(3).  An individual with limited education generally has between a seventh grade and eleventh grade level of formal education.  *Id.*

Under the regulations, education refers to a claimant's intellectual abilities, not necessarily a claimant's highest level of formal education. *See id.* § 416.964.  Because the regulations focus on the claimant's intellectual abilities, rather than the claimant's formal education, a claimant's educational level could conceivably regress as the claimant's mental impairments worsen.

Yet, by treating the prior ALJ's finding as controlling, the ALJ has not "giv[en] a fresh look" to Plaintiff's educational level during the time after the prior ALJ's decision. *Earley*, 893 F.3d at 931.  The prior ALJ rendered a decision on June 27, 2018, and none of Plaintiff's medical evidence after that date was considered by the prior ALJ.  (ECF No. 10, PageID.113.)  Even though Plaintiff's present application alleged that her disability began on June 23, 2018, the ALJ here assumed that the prior ALJ's finding applied to a time period he had not considered, simply because the present ALJ "did not have enough information" to not adopt the prior ALJ's finding.  (ECF No. 10, PageID.95, 220.)  But this is the incorrect standard.  As the *Earley* Court recognized, human health fluctuates and changes with age; therefore, the ALJ should have looked freely at the record to determine Plaintiff's educational level after 2018, without holding any new evidence to a heightened standard.  893 F.3d at 933–34.

The ALJ's failure to give Plaintiff's new medical evidence a fresh look is troubling because the record raises serious questions regarding Plaintiff's educational level.  For example, when Plaintiff met with the state consulting psychologist, she could not multiply six by three, nor could she subtract seven from 100.  (ECF No. 10, PageID.466.)  She also could not recall four digits in backwards succession.  (*Id.*)  Plaintiff informed her medical provider and the ALJ that she had a second-grade education by the time she was sixteen. (*Id.* at PageID.91, 423, 427.)  She did not graduate high school or obtain a GED, and apart from some special education services she received as a teenager, it appears that she had little formal education.  (*See id.* at PageID.74, 94, 465.)  There is also evidence that Plaintiff may not be able to read or write.  (*Id.* at PageID.93–94, 422.)  Further, while Plaintiff could

speak for herself at the hearing and answer most questions, her testimony was often disjointed, and she frequently struggled to give clear answers to the ALJ's questions.  (*See id.* at PageID.90–106.)   Based on this evidence, the ALJ could have determined that Plaintiff did not have intellectual abilities comparable to a person with a "[seventh] grade through [an eleventh] grade level of" education, and therefore had less than a limited education.  *See* 20 C.F.R. § 416.964(b)(3).  Thus, the ALJ's failure to freely consider this evidence without considering herself bound to the prior ALJ's finding was not harmless.

Similarly, with respect to the ALJ's RFC finding, she found that there was no evidence of a material change in Plaintiff's conditions and adopted the prior ALJ's RFC verbatim.  (ECF No. 10, PageID.72.)  Although both ALJs' RFC findings were supported by substantial evidence, and although the current ALJ may have relied on substantial evidence in finding that Plaintiff's conditions had not materially changed, she was not required to adopt the prior ALJ's findings if substantial evidence supported different findings.  *Earley*, 893 F.3d at 933.  However, the current ALJ did not consider changing the prior ALJ's RFC—once she found that Plaintiff's conditions had not materially changed, she simply applied res judicata and adopted the prior ALJ's RFC.[6]  (ECF No. 10, PageID.72.)

---

[6] Other courts have reasoned that even where an ALJ purports to follow *Drummond*, the ALJ has not erred if he or she has considered the new evidence.  *See, e.g., Goins v. Saul*, No. 19-117, 2020 WL 1290784, at *6 (E.D. Ky. Mar. 18, 2020).  While I generally agree with this approach, I note that merely discussing the new evidence is not enough to show that it was considered.  The new ALJ must show that he or she is willing to depart from the prior ALJ's findings, such as by modifying the prior ALJ's RFC finding absent materially changed circumstances.  *See Alexander v. Berryhill*, No. 5:18-cv-163-GFVT, 2019 WL 2250631, at *5 (E.D. Ky. May 24, 2019); *Harrell v. Comm'r of Soc. Sec.*, No. 18-10698, 2020 WL 435229, at *7 (E.D. Mich. Jan. 28, 2020) (finding the ALJ's addition of new limitations to the RFC meant that he did not actually adopt the prior RFC, even though the language in the ALJ decision suggested he was required to

To be clear, the current ALJ erred not because she credited the prior ALJ's finding, but because she treated it as binding.  *See Earley*, 893 F.3d at 933.  Even if Plaintiff's symptoms had not changed since her prior application, the ALJ could have completely ignored the prior ALJ's finding and assigned a different educational level or RFC if supported by substantial evidence.  *See id.*  The ALJ also could have properly found that there were no significant changes to Plaintiff's conditions, and, in the interest of "consistency," adopted the prior ALJ's findings after determining them to be persuasive. *See id.* at 931, 933–34.  The bottom line is that the ALJ here should have freely considered the new evidence herself, instead of blindly deferring to the prior ALJ's findings.  *See id.* Because the ALJ did the latter, Plaintiff was denied a fair consideration of her educational level and RFC.  Therefore, I suggest remanding this case so that the ALJ can properly consider Plaintiff's educational level and RFC under *Earley*.[7]  *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) ("[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow [the

---

do so).  *Contra Goins*, 2020 WL 1290784, at *6 ("Even if the evidence Goins points to could support a more limited RFC than that which ALJ Reynolds assigned, the Court must still affirm ALJ Reynolds's RFC determination, as it was based on substantial evidence.").  If an ALJ feels *bound* to default to prior findings, then he or she has not actually given a fresh look to the new evidence, no matter how much the ALJ discusses the evidence in his or her decision.  These discussions would merely be a façade, hiding a predetermined outcome.  Thus, an ALJ who purports to be bound by *Drummond*, and complies with both *Drummond* and SSAR 98-4(6), cannot be said to have genuinely considered the new evidence even if the ALJ discusses them at length or adopts new findings.  Therefore, the ALJ's extensive RFC discussion in this case, while supported by substantial evidence, does not comply with *Earley*.

[7] I suggest declining to award benefits here because "such a ruling 'is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking.'"  *Id.* at 934–35.  That is not the case here—applying the correct standard, the ALJ might still arrive at the same outcome.  Therefore, remand is appropriate to correct this error.

proper legal standards] and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'").

### Conclusion

For the previously discussed reasons, I recommend **GRANTING** Plaintiff's motion, (ECF No. 12), **DENYING** Defendant's motion, (ECF No. 13), and remanding the decision.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which

it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 13, 2021

S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge